UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ROSA BADALAMENTI,

            Plaintiff,

     v.

BOROUGH OF WESTVILLE, et al.,

            Defendants.

Civil No. 11-4399 (NLH/KMW)

**OPINION**

**APPEARANCES:**
Stephen R. Dumser, Esquire
Swartz Campbell, LLC
1300 Route 73
Bloom Court, Suite 101
Mt. Laurel, New Jersey 08054
    *Attorney for Plaintiff Rosa Badalamenti*

Linda A. Galella, Esquire
Allan E. Richardson, Esquire
Richardson, Galella & Austermuhl
142 Emerson Street
Suite B
Woodbury, New Jersey 08096
    *Attorney for Defendants Borough of Westville,*
    *Michael DeNick, and John Grady*

**HILLMAN, District Judge**

    This matter comes before the Court by way of a motion [Doc.
No. 76] by Defendants Borough of Westville, Michael DeNick, and
John Grady seeking summary judgment pursuant to Federal Rule of
Civil Procedure 56.  The Court has considered the parties'
submissions and decides this matter pursuant to Federal Rule of
Civil Procedure 78.

    For the reasons expressed below, Defendants' motion for

summary judgment will be granted in part and denied in part.

I.   **JURISDICTION**

In the second amended complaint [Doc. No.25], Plaintiff asserts claims pursuant to 42 U.S.C. § 1983 for alleged violations of her constitutional rights as well as state law claims under the New Jersey Civil Rights Act.  The Court has jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331, and may exercise supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367.

II.  **BACKGROUND**

Plaintiff's claims arise from the events that occurred on the evening of March 20, 2010 in Westville, New Jersey which ultimately led to Plaintiff being arrested and subsequently held at the Westville Police Station.  That evening, Plaintiff was a patron at Schileen's Pub in Westville, New Jersey which is approximately a ten-minute walk from her home in Brooklawn, New Jersey.  (Pl.'s Statement of Facts [Doc. No. 79-2] (hereinafter, "Pl.'s SOF"), ¶ 2; see also Defs.' Resp. to Pl.'s Statement of Material Facts [Doc. No. 83-1] (hereinafter, "Defs.' Resp. SOF") ¶ 2.)  Plaintiff was at Schileen's for approximately forty-five

2

minutes to an hour.  (Pl.'s SOF ¶ 3; Defs.' Resp. SOF ¶ 3.)
Plaintiff admits that she was intoxicated that evening and that
she consumed between two to four drinks during the time she was
at Schileen's.[1]  (Defs.' Statement of Undisputed Material Facts
[Doc. No. 76-5] (hereinafter, "Defs.' SOF"), ¶ 2; see also Pl.'s
Resp. to Defs.' Statement of Undisputed Fact [Doc. No. 79-1]
(hereinafter, "Pl.'s Resp. SOF") ¶ 2.)

After that initial forty-five minutes to an hour had
passed, Plaintiff went outside of Schileen's to smoke a
cigarette.  (Pl.'s SOF ¶ 4; Defs.' Resp. SOF ¶ 4.)  Upon exiting
Schileen's, Plaintiff observed two police cars in the parking
lot and out of curiosity approached the scene to speak with one
of the police officers.  (Pl.'s SOF ¶ 4; Defs.' Resp. SOF ¶ 4.)
The record reflects that what Plaintiff observed outside was a
traffic stop initiated by non-party Officer Ewe, who proceeded
to arrest the driver of the stopped vehicle on outstanding
warrants.  (Pl.'s SOF ¶ 7; Defs.' Resp. SOF ¶ 7.)  Defendant
Officer Michael DeNick subsequently arrived on the scene to

---

[1]   Plaintiff represents that she was "buzzed" but not overly
intoxicated, that she had no difficulty concentrating, walking
or seeing, and that she was not slurring her words.  (Pl.'s SOF
¶ 3.)  Defendants generally admit these facts but dispute
Plaintiff's characterization that she was not overly
intoxicated.  (Defs.' Resp. SOF ¶ 3.)

assist Officer Ewe.  (Pl.'s SOF ¶ 7; Defs.' Resp. SOF ¶ 7.)  The arrested driver was placed in Defendant DeNick's police car while Officer Ewe conducted a search of the stopped vehicle which belonged to an unidentified female passenger, who was speaking with Defendant DeNick.  (Pl.'s SOF ¶ 7; Defs.' Resp. SOF ¶ 7.)  Plaintiff noticed the unidentified woman was leaning on one of the police cars, and Plaintiff proceeded to ask Officer DeNick what was happening.  (Pl.'s SOF ¶ 4; Defs.' Resp. SOF ¶ 4.)

The parties dispute exactly what happened next.  Plaintiff testified that after she asked what was going on, Defendant DeNick instructed Plaintiff to leave.  (Ex. A to Pl.'s SOF [Doc. No. 79-1], Pl.'s Dep. Tr. 138:17-19.)  Plaintiff explained that she "stood there" and she "guess[es] [Defendant DeNick] ke[pt] repeating [for her to] leave."  (Id. at 138:19-20.)  According to Plaintiff, she then "turned [her] back, and that's when [Defendant DeNick] grabbed" her.  (Id. at 138:20-21.)  Plaintiff further testified that just after Defendant DeNick grabbed her, she blacked out and does not remember how she ultimately arrived at the police station, who handcuffed her, or why she was arrested.  (Id. at 138:21-24.)

Despite Plaintiff's inability to remember, the record

reflects that Plaintiff was arrested by Defendant DeNick and handcuffed outside of Schileen's and then transported to the Westville Police Station, a short distance away, by Defendant Sergeant John Grady. (Pl.'s SOF ¶¶ 8, 28-29; Defs.' Resp. SOF ¶¶ 8, 28-29.) During the short car ride from Schileen's Pub to the Police Station, Plaintiff asked Defendant Grady why she had been arrested and also informed him that she needed to use a bathroom, but Defendant Grady did not respond. (Pl.'s SOF ¶ 8; Defs.' Resp. SOF ¶ 8.) Upon arriving at the Police Station, Defendant Grady escorted Plaintiff inside, refastened her handcuffs, and attached Plaintiff to a bench inside the Station's detention room using the handcuffs. (Pl.'s SOF ¶ 30; Defs.' Resp. SOF ¶ 30.)

The parties sharply dispute the nature of Plaintiff's conduct while she was held at the Police Station and the circumstances that ultimately resulted in Plaintiff urinating in the holding area while in custody. Plaintiff contends that she was handcuffed to the bench in the detention room which was a small room with an open door. (Pl.'s SOF ¶ 9.) According to Plaintiff, she asked why she had been arrested but did not receive any response to her inquiry. (Id.) Plaintiff represents that during the first twenty minutes that she was

held in the detention area, she was calm and repeatedly asked to use the bathroom. (Id. ¶ 10.) She further asserts that she was then told that she would be allowed to use the bathroom as soon as she gave Defendants her name. (Id. ¶ 11.) Plaintiff testified that she continued to ask to use the bathroom as time went by and that Defendants essentially ignored her requests and just smiled at her and joked around. (Id. ¶ 12.) Plaintiff further testified that upon telling Defendant DeNick yet again of her need to use the bathroom, Defendant DeNick eventually told Plaintiff to urinate on the floor of the holding area. (Id. ¶ 13.)

As a result of Defendant DeNick's alleged instruction that Plaintiff should urinate on the floor, Plaintiff testified that she became upset and started yelling and screaming. (Id.) Finally, at a certain point, Plaintiff represents that she was no longer able to control her urge to use the bathroom, and she pulled down her jeans with the hand that was not cuffed to the bench, crouched down and urinated on her jeans, her feet, her shoes, and the cement floor near the bench. (Id.) According to Plaintiff, upon pulling up her jeans and sitting down on the bench after she urinated on the floor, she looked up immediately and saw Defendant DeNick and another police officer laughing and

6

smiling as though it was a big joke.  (Id.; see also Ex. A to
Pl.'s SOF [Doc. No. 79-1], Pl.'s Dep. Tr. 168:9-169-25.)

Defendants' version of the events in the Police Station
that evening varies greatly from Plaintiff's.  According to
Defendant Grady, while he was transporting Plaintiff to the
Police Station, she was yelling and screaming in the back of his
vehicle.[2]  (Defs.' SOF ¶ 11.)  Upon arriving at the Police
Station, Defendant Grady removed Plaintiff's handcuffs and
handcuffed her to the bench.  (Id. ¶ 16.)  Defendant Grady
testified that Plaintiff was hostile during this time – yelling,
screaming, cursing, and trying to pull away from him.  (Ex. F to
Defs.' SOF [Doc. No. 76-3] Def. Grady's Dep. Tr. 67:20-68-13.)
After handcuffing Plaintiff to the bench, Defendant Grady
testified that he left the room and Plaintiff continued
screaming.  (Id. at 70:18-23.)  Prior to leaving the room,
Defendant Grady indicated that Plaintiff again asked to use the
restroom and that he informed Plaintiff she would be permitted
to use the bathroom as soon as she calmed down and maintained
control.  (Id. at 70:24-71:5.)

Similarly, Defendant DeNick also testified that Plaintiff

---

[2]     Defendant Grady acknowledges that Plaintiff asked to use
the bathroom while he was transporting her to the Police
Station.  (Defs.' SOF ¶ 12.)

was acting unruly – using offensive language, cursing, and
yelling.  (Ex. E to Defs.' SOF [Doc. No. 76-3] Def. DeNick's
Dep. Tr. 55:1-3.)  According to Defendant DeNick, when he was
attempting to take Plaintiff's booking photograph for
processing, Plaintiff tried to hit the digital camera out of
Defendant DeNick's hand, and tried to strike and kick him.  (Id.
at 55:6-20.)  Defendant DeNick testified that after this
encounter with Plaintiff, he left the room where Plaintiff was
being held and informed Defendant Grady, who was in the
Sergeant's Office, that he was unable to get Plaintiff's
photograph.  (Id. at 56:13-24.)  After reporting this incident,
Defendant DeNick tried to process Plaintiff and begin the arrest
report by getting Plaintiff's information, but Plaintiff was
yelling and screaming throughout his attempts such that
Defendant DeNick could not get any information from her.  (Id.
at 59:24-60:8.)  Defendant DeNick acknowledges that Plaintiff
asked to use the bathroom on two occasions and represents that
he told Plaintiff that she could use the bathroom as long as she
calmed down, relaxed, and stopped being hostile, unruly, and
belligerent to the officers.  (Id. at 68:1-8.)

  With respect to Plaintiff urinating while she was
handcuffed to the bench, Defendant DeNick testified that he was

8

out of the room completing a special complaint when he noticed that Plaintiff was quiet. (Id. at 67:14-21.) Defendant DeNick represents that Plaintiff's two requests to use the bathroom were made close in time, a couple of minutes before he exited to complete the special complaint. (Id. at 69:5-9.) Plaintiff being quiet, however, raised Defendant DeNick's suspicions, and upon returning to the processing room when he was done with his complaint, he observed that Plaintiff was sitting on the bench where she had urinated on herself. (Id. at 67:20-24.) Defendant DeNick testified that it was clear upon his return that Plaintiff had urinated through her jeans because her private area was wet, the bench she was sitting on was wet, and the ground underneath her was also wet. (Id. at 70:17-21.) Defendant DeNick expressly denies that he, or any other officer, told Plaintiff to urinate on the floor, and affirmatively testified that neither he, nor anyone else was present at the time that Plaintiff urinated.[3] (Id. at 72:15-17, 72:18-73:12.)

---

[3]   Defendant Grady similarly testified that while he was in his office he heard Plaintiff screaming and carrying on in the detention area, and that after a while things got quiet. (Ex. G to Defs.' SOF [Doc. No. 76-3] Def. Grady's Dep. Tr. 15:7-11.) At that time, Defendant DeNick informed Defendant Grady that Plaintiff had urinated on herself, and the two went back to where Plaintiff was at which time he personally observed that Plaintiff had urinated on herself. (Id. at 15:12-20.)

Based on the events of March 20, 2010, Plaintiff's second amended complaint asserts nine separate Counts.  Count I purportedly alleges a claim for excessive force against Defendant DeNick in violation of Plaintiff's Fourth and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983. (Second Am. Compl. [Doc. No. 25] ¶¶ 11-16.)  In light of her status as a pre-trial detainee, Count II of the second amended complaint alleges a Section 1983 claim against Defendants DeNick and Grady for cruel and unusual punishment in violations of Plaintiff's due process rights under the Fourteenth Amendment based on her conditions of confinement at the Police Station. (Id. ¶¶ 17-33.)  Count III asserts a claim for discrimination by Defendants DeNick and Grady cognizable under 42 U.S.C. § 1983 and the Fourteenth Amendment.  (Id. ¶¶ 34-40.)  Counts IV and V are asserted against the Borough of Westville and purportedly allege Monell claims for (1) failure to instruct, supervise, control and discipline police officers employed by the Borough, and (2) municipal liability resulting from the Borough's alleged policy which deprived detainees of access to bathroom facility at the Police Station in violation of their due process rights under the Fourteenth Amendment.  (Id. ¶¶ 41-46, 47-49.)  Count VI alleges pendent state claims under the New Jersey Civil

Rights Act for the same constitutional violations set forth in
the prior Counts. (Id. ¶¶ 50-57.) In Count VII, Plaintiff
alleges that she was subjected to an unreasonable search and
seizure in the form of a strip search in violation of the Fourth
Amendment and her rights to privacy. (Id. ¶¶ 58-65.) Count IX
alleges an identical claim under the laws and Constitution of
the state of New Jersey. (Id. ¶¶ 72-75.) Finally, Count VIII
purports to assert a claim for failure to instruct, supervise,
control and discipline police officers employed by the Borough
with respect to the use of strip searches. (Id. ¶¶ 66-71.)


III. **DISCUSSION**

    A.   **Summary Judgment Standard**

In the present motion, Defendants seeks the entry of
summary judgment in their favor on all of Plaintiff's claims.
Summary judgment is appropriate where the Court is satisfied
that "'the pleadings, depositions, answers to interrogatories,
and admissions on file, together with the affidavits, if any,
show that there is no genuine issue as to any material fact and
that the moving party is entitled to a judgment as a matter of
law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)
(citing FED. R. CIV. P. 56).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (citing Anderson, 477 U.S. at 255).

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." (citation omitted); see also Singletary v. Pa. Dept. of Corr., 266 F.3d 186, 192 n.2 (3d

12

Cir. 2001) ("Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by "showing" -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof.") (citing Celotex, 477 U.S. at 325).

Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Celotex, 477 U.S. at 324.  A "party opposing summary judgment may not rest upon the mere allegations or denials of the ... pleading[s.]" Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001) (internal quotations omitted).  For "the non-moving party[] to prevail, [that party] must 'make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  Cooper v. Sniezek, 418 F. App'x 56, 58 (3d Cir. 2011) (citing Celotex, 477 U.S. at 322).  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.

13

Anderson, 477 U.S. at 256-57.

**B.    42 U.S.C. § 1983**

In asserting that her federal civil rights were violated,
Plaintiff seeks to bring several claims under 42 U.S.C. § 1983
for violations of several of her constitutional rights.  To be
clear, Section 1983 is not a source of substantive rights, but
provides a vehicle for vindicating the violation of other
federal rights.  Graham v. Connor, 490 U.S. 386, 393-94 (1989).
Section 1983 provides in pertinent part that "[e]very person
who, under color of any statute, ordinance, regulation, custom,
or usage, of any State ... subjects, or causes to be subjected,
any citizen of the United States or other person within the
jurisdiction thereof to the deprivation of any rights,
privileges, or immunities secured by the Constitution and laws,
shall be liable to the party injured in an action at law, suit
in equity, or other proper proceeding for redress[.]"  42 U.S.C.
§ 1983.

"To state a claim under 42 U.S.C. § 1983, a plaintiff must
allege a person acting under color of state law engaged in
conduct that violated a right protected by the Constitution or
laws of the United States."  Morrow v. Balaski, 719 F.3d 160,
165-66 (3d Cir. 2013) (citing Nicini v. Morra, 212 F.3d 798, 806

(3d Cir. 2000)).  The Court's "'first step in evaluating a section 1983 claim is to 'identify the exact contours of the underlying right said to have been violated' and to [then] determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'"  <u>Morrow</u>, 719 F.3d at 166 (quoting <u>Nicini</u>, 212 F.3d at 806.)

IV.  **<u>ANALYSIS</u>**

    A.  **Gender Discrimination Claim Against Defendants DeNick and Grady**

Defendants DeNick and Grady seek the entry of summary judgment in their favor on Count III of Plaintiff's second amended complaint which purports to bring a claim for gender discrimination under 42 U.S.C. § 1983.  These Defendants argue that Plaintiff cannot establish a prima facie case for an equal protection violation on the basis of alleged gender discrimination because she has failed to "produce any evidence that she was similarly situated to non-protected persons who were treated more favorably." (Defs.' Br. 26-27.)  Defendants also assert that there is no evidence in the record to show that Plaintiff was "purposefully discriminated against for being a member of ... a protected class and that she was somehow treated differently than an unprotected class." (<u>Id.</u> at 27.)

15

Although Plaintiff generally opposes the pending motion for
summary judgment, in her opposition she explicitly concedes that
she "is unable to set forth a prima facie case of gender
discrimination and ... that aspect of her claim should be
dismissed." (Pl.'s Opp'n 26.)  Accordingly, because Plaintiff
has explicitly abandoned this claim, Defendants DeNick and Grady
are entitled to summary judgment on Count III of the second
amended complaint.  Durham v. Atlantic City Elec. Co., No. 08-
1120, 2010 WL 3906673, at *11 (D.N.J. Sept. 28, 2010) (granting
summary judgment in favor of defendant on claims that were
expressly abandoned by plaintiff); see also Daughtry v. Family
Dollar Stores, Inc., No. 09-5111, 2011 WL 601270, at *8 (D.N.J.
Aug. 5, 2011) (granting defendant summary judgment on NJLAD
claim because plaintiff failed to respond to defendant's
argument and thus waived claim) (citing Player v. Motiva Enters.
LLC, 240 F. App'x 513, 522 n.4 (3d Cir. 2007); cf. Skirpan v.
Pinnacle Health Hosps., No. 07-1730, 2010 WL 3632536, at *6
(M.D. Pa. Apr.21, 2010) (concluding that "[w]here a plaintiff
has brought a cause of action which is challenged through [a]
motion for summary judgment as legally insufficient, it is
incumbent upon the plaintiff to affirmatively respond to the
merits of a summary judgment motion" and noting that "a

Plaintiff's failure to respond to arguments raised on summary judgment effectively constitutes an abandonment of these causes of action and essentially acts as a waiver of these issues.").

**B.   Excessive Force Claim Against Defendant DeNick**

Count I of Plaintiff's second amended complaint alleges that in the course of effecting her arrest, Defendant DeNick "deliberately and intentionally used excessive force and objectively unreasonable force upon" Plaintiff causing her injury, including bruising to her chest, arms, and wrists in violation of the Fourth and Fourteenth Amendments.  (Second Am. Compl. ¶ 12.)  "In determining whether the force used to affect a seizure is excessive, the question is whether, under the totality of the circumstances, the officers' actions were objectively reasonable."  Walke v. Cullen, 491 F. App'x 273, 277 (3d Cir. 2012) (citing Graham v. Connor, 490 U.S. 386, 398-99; Kopec v. Tate, 361 F.3d 772, 776-77 (3d Cir. 2004)).

The Third Circuit has identified a non-exhaustive list of factors to determine whether the force employed during a seizure was reasonable.  These factors include: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officer or others; (3) whether the suspect is actively resisting being seized or attempting to

17

evade seizure by flight; (4) the possibility that the suspect is violent or dangerous; (5) the duration of the police action; (6) whether the police action takes place in the context of effecting an arrest; (7) the possibility that the suspect may be armed; and (8) the number of persons the officer must contend with at one time.  See Kopec, 361 F.3d at 776-77.  In addition, the Court should also consider whether "the physical force applied was of such an extent as to lead to injury." Mellott v. Heemer, 161 F.3d 117, 122 (3d Cir. 1998) (citation omitted). Accordingly, to prove her claim for excessive force in the instant case, Plaintiff must established that the degree of alleged force employed by Defendant DeNick, under the totality of the circumstances and in consideration of the facts and circumstances known to him at the time the force was employed, was clearly unreasonable.

Defendant DeNick argues that "[t]here is no evidence here that excessive force was used to effectuate [Plaintiff's] arrest or during any time that [P]laintiff was in police custody." (Br. in Supp. of Mot. for Summ. J. of Defs. [Doc. No. 76-1] (hereinafter, "Defs.' Br."), 24.)  Defendant DeNick highlights that Plaintiff testified that she blacked out and does not remember being arrested, being handcuffed, or being driven to

the Police Station.  (Id.)  Defendant DeNick challenges
Plaintiff assumption that the bruises on her arms, chest, and
wrists resulted from the arrest since Plaintiff has no
recollection of force being used against her, noting that these
marks could pre-date her arrest.  (Id.)  In opposing the entry o
summary judgment on the excessive force claim, Plaintiff admits
that she is "unable to explain the exact applications of force
which caused the bruising."  (Br. in Opp'n to Defs.' Mot. for
Summ. J. [Doc. No. 79] (hereinafter, "Pl.'s Opp'n"), 24.)
Rather, Plaintiff argues that she "knows ... that prior to the
incident there was no bruising and the next morning the bruising
was present."  (Id.)  Plaintiff argues that because she was
arrested for a minor disorderly persons offense and because
there was no indication she was armed or dangerous or resisting
arrest in any way, the use of force by Defendant DeNick was
objectively unreasonable.[4]  (Id. at 25.)

    To survive summary judgment on this claim, Plaintiff must
make a showing sufficient to establish the existence of every
element essential to her excessive force claim for which she
bears the burden of proof at trial.  Here, however, Plaintiff

---

[4]    To the extent Plaintiff's opposition argues that Defendant
Grady also used excessive force against her, such a claim is not
alleged in the second amended complaint.

has failed to come forward with sufficient evidence to establish that the degree of alleged force employed by Defendant DeNick, under the totality of the circumstances and in consideration of the facts and circumstances known to him at the time the force was employed, was clearly unreasonable.  Plaintiff herself testified that she does not remember being arrested and or handcuffed by Defendant DeNick and cannot offer sufficient testimony to describe the manner of forced she alleges Defendant DeNick employed.  Plaintiff simply relies on the fact that the morning following her being arrested and held at the Police Station, she had bruises on her chest, arms, and wrists and assumes that these bruises were inflicted during the course of her arrest.  However, Plaintiff offers no testimony or medical evidence to support that these bruises are consistent with the type that may be inflicted during an arrest or that these bruises are consistent with those that would result from the specific actions of Defendant DeNick.  More importantly, Plaintiff completely fails to come forward with any evidence that Defendant DeNick acted in a way that could have inflict bruises on her arms, chest, and wrists during the course of her arrest.  Plaintiff only proffers evidence that Defendant DeNick "grabbed" her just before she blacked out.  Certainly some

amount of physical contact and modest force is necessary in the course of any arrest in order to secure the arrestee but that generally reaching, contacting, or grabbing of an arrestee in and of itself is not sufficient to support a claim for excessive force. In the absence of specific facts by Plaintiff or a witness to the incident which describe the nature of the force utilized and the method in which it was employed, there is no way that Plaintiff can succeed at trial on her excessive force claim. Accordingly, summary judgment will be entered in favor of Defendant DeNick on Count I of Plaintiff's second amended complaint.

### C. Qualified Immunity for Defendants DeNick and Grady

Defendants DeNick and Grady argue that they are entitled qualified immunity on all of Plaintiff's constitutional claims as a matter of law. (Defs.' Br. 7-8.) The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). "Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power

21

irresponsibly and the need to shield officials from harassment,
distraction, and liability when they perform their duties
reasonably." Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808,
815, 172 L. Ed. 2d 565 (2009). The doctrine provides a
government official immunity from suit rather than a mere
defense from liability, and, thus, the issue of whether
qualified immunity applies should be decided at the earliest
possible stage in litigation. Id. "Qualified immunity ...
gives government officials breathing room to make reasonable but
mistaken judgments, and protects all but the plainly incompetent
or those who knowingly violate the law." Fiore v. City of
Bethlehem, 510 F. App'x 215, 219-20 (3d Cir. 2013) (citing
Messerschmidt v. Millender, --- U.S. ----, 132 S. Ct. 1235,
1244, 182 L.Ed.2d 47 (2012)) (internal quotation marks and
citations omitted).

　　Qualified immunity attaches if the official can demonstrate
his or her conduct was "objectively reasonable." See Harlow,
457 U.S. at 818. "There are two prongs to the objective
reasonableness inquiry: first, whether the plaintiff's
constitutional or statutory rights were in fact violated;
second, whether it would have been clear to a reasonable officer
that the conduct was unlawful." Davis v. Malitzki, 451 F. App'x

228, 232 (3d Cir. 2011) (citing <u>Saucier v. Katz</u>, 533 U.S. 194, 200-01, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)).  If the answer to either question is "no," the analysis may end there.  <u>See</u> <u>Pearson</u>, 129 S.Ct. at 816; <u>see also Bennett v. Murphy</u>, 274 F.3d 133, 136 (3d Cir. 2002) ("If the plaintiff fails to make out a constitutional violation, the qualified immunity inquiry is at an end; the [official] is entitled to immunity.").

Plaintiff's cruel and unusual punishment claim is analyzed under the Due Process Clause of the Fourteenth Amendment because Plaintiff was a pre-trial detainee during the relevant time period.  <u>Tapp v. Proto</u>, 404 F. App'x 563, 566 (3d Cir. 2010) (per curiam) (noting that plaintiff's claims that arise when he is a pretrial detainee are prosecuted under the Due Process Clause).  A pre-trial detainee is entitled to at least those constitutional rights that are enjoyed by convicted prisoners. <u>Bell v. Wolfish</u>, 441 U.S. 520, 545, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).  To state a claim for cruel and unusual punishment, Plaintiff must allege both an objective and a subjective component.  <u>Wilson v. Setter</u>, 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991); <u>see also Counterman v. Warren Cnty.</u> <u>Corr. Facility</u>, 176 F. App'x 234, 238 (3d Cir. 2006).  Only "extreme deprivations" are sufficient to make out an Eighth

23

Amendment claim.  See Hudson v. McMillan, 503 U.S. 1, 9, 112

S.Ct. 995, 117 L.Ed.2d 156 (1992).

As to the objective component, only those deprivations

denying the "minimal civilized measure of life's necessities,"

which includes food, clothing, shelter, sanitation, medical care

and personal safety qualify as sufficiently grave to form the

basis for an Eighth Amendment violation.  See Betts v. New

Castle Youth Dev. Ctr., 621 F.3d 249, 256 (3d Cir. 2010) (citing

Farmer v. Brennan, 511 U.S. 825, 832, 835, 114 S.Ct. 1970, 128

L.Ed.2d 811 (1994)).  As to the subjective component, Plaintiff

must show that the prison official acted with deliberate

indifference to the prisoner's health or safety.  See Wilson,

501 U.S. at 298-99; City of Revere v. Massachusetts General

Hosp., 463 U.S. 239, 244 (1983) (explaining that the due process

rights of a person are at least as great as the Eighth Amendment

protections available to a convicted prisoner).  Eighth

Amendment standards are relevant here at least to the extent

that they define a floor beneath which state actors cannot go.

See Grohs v. Yatauro, 984 F. Supp. 2d 273, 283 (D.N.J. 2013)

("[I]t is true as a general matter that persons involuntarily

committed are entitled to more considerate treatment and better

conditions of confinement than are persons who are being

24

criminally punished.") (citations omitted); see also Fuentes v. Wagner, 206 F.3d 335, 344 (3d Cir. 2000) (recognizing that "'pretrial detainees are entitled to at least as much protection as convicted prisoners, so the protections of the Eighth Amendment would seem to establish a floor of sorts.'") (quoting Kost v. Kozakiewicz, 1 F.3d 176, 188 n.10 (3d Cir. 1993)).[5]

With respect to Count II of the second amended complaint alleging that Defendants DeNick and Grady violated Plaintiff's Fourteenth Amendment rights when they denied her requests to use the restroom ultimately causing Plaintiff to urinate on the floor, Defendants DeNick and Grady assert that there was no violation of Plaintiff's constitutional rights because the amount of time she was denied access to a bathroom was minimal, the events unfolded quickly, and the officers had no way of knowing Plaintiff would urinate on herself so quickly. (Defs.' Br. 10.) They further argue that even if a constitutional violation is assumed for purposes of argument, their actions were reasonable under the circumstances and entitles them to qualified immunity here. (Id. at 20-21.) Defendants essentially contend that Plaintiff's unruly behavior made her a

_____

[5]    The Court recognizes that cases involving the Eighth Amendment are not dispositive here, but notes that they do provide general guidance.

threat to the officers such that she could not be unhandcuffed and permitted to use the restroom.  However, the Court cannot say as a matter of law that Defendants are entitled to qualified immunity at this stage of the litigation given that there exist genuine disputes material facts relevant to the resolution of Plaintiff's claims.

While Defendants assert that Plaintiff was unruly, yelling, and screaming the entire time that she was in the Police Station, Plaintiff points to evidence from another detainee present that evening, Sean Hunt, who specifically testified that he could hear Plaintiff's interaction with the officers while she was handcuffed to the bench and that she was calm for about twenty minutes from the time he first heard Plaintiff ask to use the bathroom before she started screaming.  (Ex. D to Pl.'s SOF [Doc. No. 79-1] Sean Hunt's Dep. Tr. 32:11-23.)  This testimony, if believed by the jury, could result in a finding that Defendants' purported reasons for denying Plaintiff access to a restroom were untrue and that the amount of time she was denied access was substantially longer than Defendants themselves testified too.  Moreover, Plaintiff's own testimony reflects that Defendant DeNick explicitly instructed Plaintiff to urinate on the floor of the holding area and that he and at least one

26

other officer visually observed Plaintiff urinate on the floor
and pull her jeans and undergarments back up after she finished.
(Ex. A to Pl.'s SOF [Doc. No. 79-1] Pl.'s Dep. Tr. 164:11-
165:17.)  This combined testimony from Plaintiff and Sean Hunt,
if believed by a jury, create a genuine dispute of material fact
that precludes a finding of qualified immunity here.  If
Defendants in fact denied Plaintiff's request to use the
restroom and instructed her to urinate on the floor of the
holding cell while she was observed by at least two officers,
there is sufficient evidence from which a jury could determine
as a matter of law that the actions by Defendants violated
Plaintiff's constitutional rights and were not objectively
reasonable.  The Court cannot make credibility determinations at
the summary judgment stage, and the facts here are disputed in
significant and material ways that prevent the Court from
accurately assessing Defendants' entitlement to qualified
immunity here.  Accordingly, Defendants' motion for summary
judgment on the basis of qualified immunity must be denied
without prejudice at this time.[6]

---

[6]    To the extent Plaintiff also alleges a claim that she was
subjected to a strip search in violation of her Fourth Amendment
rights, the determination of Defendants' entitlement to
qualified immunity on this claim also turns on disputed issues
of material fact – namely whether the officers in fact visually

27

**D.   Monell Claims Against the Borough of Westville**

Generally, "a municipality cannot be held liable under §
1983 on a *respondeat superior* theory." Marvel v. Cnty. of Del.,
397 F. App'x 785, 790 (3d Cir. 2010) (citing Monell v. Dep't of
Soc. Servs., 436 U.S. 658, 690-91 (1978)).  A municipality may
be held liable under 42 U.S.C. § 1983 "'only ... when the
alleged constitutional transgression implements or executes a
policy, regulation or decision officially adopted by the
governing body or informally adopted by custom.'" Mulholland v.
Gov't of the Cnty. of Berks, Pa., 706 F.3d 227, 237 (3d Cir.
2013) (citing Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d
Cir. 1996)).  Accordingly, "there are two ways that a plaintiff
can establish municipal liability under § 1983: [either] policy
or custom." Watson v. Abington Twp., 478 F.3d 144, 155 (3d Cir.
2007).

---

observed Plaintiff while she removed her clothing, urinated, and
pulled her clothing back up – which cannot be resolved at this
time without the Court improperly making credibility
determinations as to what actually occurred that night.
  Additionally, the Court will deny summary judgment on
Plaintiff's pendant state law claims under the New Jersey Civil
Rights Act because the same disputed issues of material fact
noted above also preclude the entry of summary judgment on these
claims which are analyzed under the same framework as claims
brought pursuant to 42 U.S.C. § 1983.

"Under Monell, a plaintiff shows that a policy existed when a decision maker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." Watson, 478 F.3d at 155 (citation and internal quotations omitted).  Alternatively, "[a] plaintiff may establish a custom ... by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.  In other words, custom may be established by proving knowledge of, and acquiescence to, a practice." Id. at 155-56 (citation and internal quotations omitted).  Where municipal liability is premised on an unofficial custom, the plaintiff must "produce facts tending to show the [municipality] knew of a pattern of constitutional violations or that such consequences were so obvious the [municipality's] conduct can only be characterized as deliberate indifference." Pelzer v. City of Phila., 656 F. Supp. 2d 517, 533 (E.D. Pa. 2009).  "In addition to proving that an unlawful policy or custom existed, a plaintiff also bears the burden of proving that such a policy or custom was the proximate cause of the injuries suffered." Watson, 478 F.3d at 156.

Here, the Borough has failed to meet its burden on summary judgment with respect to Plaintiff's Monell claims.  Plaintiff has pointed to evidence, which, if believed, demonstrates that the Borough may be liable here.  For example, Plaintiff relies on the testimony of Defendant DeNick that he was not aware of any written polices or standard operating procedures of any kind regarding the handling of intoxicated detainees, nor did he receive any training in when to allow female detainees to use the restroom.  (Pl.'s SOF ¶¶ 34.)  She also notes that there were no written policies in existence at the time regarding the use of restrooms by detainees and the monitoring of detainees in the holding area.  (Id. ¶ 35.)  Plaintiff has pointed to evidence[7] from which a jury could find that the consequences of

---

[7]    While Defendants deny these facts, they fail to cite to any affidavits, deposition testimony, or other documents submitted in connection with this motion in support of these denials in violation of Local Civil Rule 56.1.  Local Civil Rule 56.1(a) instructs parties responding to material statements of fact that they must "indicat[e] agreement or disagreement and, if not agreed, stat[e] each material fact in dispute and cit[e] to the affidavits and other documents submitted in connection with the motion."  L. Civ. Rule 56.1(a) (emphasis added).  As a result of Defendants' failure in this regard, the Court "will consider any statement of fact which was not denied ... with a citation to the record as undisputed for the purposes of this motion for summary judgment."  See Friedman v. Bank of America, N.A., No. 09-2214, 2012 WL 1019220, at *2 n.6 (D.N.J. Mar.26, 2012) (citing Stouch v. Twp. of Irvington, No. 03-6048, 2008 U.S. Dist. LEXIS 54055, at *5 n. 1, 2008 WL 2783338 (D.N.J. July 16, 2008)).

not maintaining a written policy on the use of restrooms by detainees and of failing to properly train and instruct officers was sufficiently obvious enough that the Borough's failure can fairly be characterized as deliberate indifference to the constitutional rights of pre-trial detainees.

**V.   <u>CONCLUSION</u>**

For the foregoing reasons, Defendants' motion for summary judgment is granted in part and denied in part.  An Order consistent with this Opinion will be entered.

Dated:  September 25, 2014            s/ Noel L. Hillman
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.

31